### CHILDRESS COUNTY LAND AND CATTLE COMPANY
### v. A. J. BAKER, COMMISSIONER, ET AL.

Decided April 25, 1900.

1. **Boundary—Conflicting Locations—Burden of Proof.**

Where a suit for land between claimants of different locations turns upon the question of boundary, plaintiff, holding under a junior location, has the burden of showing that defendant's locations conflict with his own, though his is patented and defendant's are not.

2. **Same—School Land.**

Especially would this be the rule where defendants claimed as purchasers of land surveyed and set apart to the school fund as alternate sections of railroad grant surveys made before plaintiff's location, and not patentable to the State or the school fund, but only to subsequent purchasers.

3. **Boundary—Conflicting Locations—Special Verdict—Additional Findings—Harmless Error.**

In case it should be held that a verdict of the jury upon special issues, that it could not determine the extent of the conflict which it found to exist between locations claimed by plaintiff and defendants respectively, precluded the court from making further findings establishing the extent of such conflict, his action in so doing was not error of which plaintiff could complain; the burden being on him to show the extent of the conflict, the verdict without such additional findings would only have warranted judgment against him for all defendants claimed.

4. **Constitution—Title of Act—Counties—Surveys.**

An Act of the Legislature entitled, "An Act attaching certain counties therein named to the counties of Jack and Montague for judicial and other purposes," and which attached Hardeman and Young counties to Jack and Montague for surveying purposes (Act November 6, 1866) was not unconstitutional for failure to sufficiently describe such object in its title.

5. **Location—Estoppel of State—Commissioner of Land Office.**

The Commissioner of the General Land Office having, at the time of plaintiff's location, no right to dispose of public school lands, the State and its grantees could not be estopped from claiming as against such location, lands previously set apart by surveys to the school land and conflicting with plaintiff's location though the maps and records of the Land Office showed at the time that no such conflict existed.

6. **Same—Estoppel—Purchaser with Warranty.**

By Justice KEY.—Plaintiff can not avail himself of such claim by estoppel, where he shows that he purchased the land sued for with warranty, and does not allege insolvency of the warrantor, failing therein to show ultimate injury.

APPEAL from Travis, Fifty-third District. Tried below before Hon. F. G. MORRIS.

*Hogg & Robertson,* for appellant.

*T. S. Smith,* Attorney-General, and *N. B. Morris,* for the State, appellee.

*E. E. Diggs, E. Cartledge, D. G. Smith,* and *West & Cochran,* for appellees other than the State.

KEY, ASSOCIATE JUSTICE.—Appellant, the Childress County Land and Cattle Company, brought this suit against A. J. Baker, Commissioner of the General Land Office of the State of Texas, and against several other defendants who were sued as individuals, to recover forty-seven surveys of land situated in Childress County.

Among other relief, the plaintiff's original petition sought an injunction against Baker, as Commissioner of the Land Office, restraining him from selling to the other defendants the land sued for. The court below sustained a plea interposed by the Land Commissioner, and that feature of the suit was abandoned by the plaintiff. The other defendants disclaimed as to all the land described in the plaintiff's petition, except so much thereof as was embraced within the boundaries of twenty-seven surveys, described in their answer, and situated in block H, Waco & Northwestern Railroad Company. They also interposed a general denial and plea of not guilty; and pleading in reconvention they alleged that the lands claimed by them were part of the public free school lands of the State of Texas, and had been purchased by them from the State.

The State of Texas, by the Attorney-General, intervened in the cause and prayed for judgment canceling the patents under which the plaintiff claimed the land.

The plaintiff, by supplemental petition, replied to the pleadings of the State and the other defendants, by general and special demurrers, plea of estoppel, and alleged that the surveys claimed by the defendants, if in conflict with the plaintiff's surveys, were not made by an officer authorized to survey the same, and were therefore void; that in fact no conflict existed between the surveys claimed by the respective parties, and also charged that the defendants were not actual settlers upon nor entitled to purchase the land from the State; and therefore acquired no title by their alleged purchase.

The court below overruled all the demurrers to the plaintiff's original petition that were insisted upon, but sustained exceptions to all the supplemental petition, except the demurrers and general denial. The case then proceeded to trial before a jury; and, in accordance with a request made by the defendants, the court submitted special issues to the jury and a special verdict was returned. Thereupon, the plaintiff moved the court to render judgment for it, which the court declined to do; and after making and filing certain additional findings of fact, entered judgment establishing the line in dispute between the parties substantially as claimed by the defendants, and canceling the plaintiff's patents to all the land in conflict with the surveys claimed by the defendants.

The plaintiff has appealed, and presents the case in this court in an elaborate brief, containing over forty assignments of error. In a brief of equal magnitude, counsel for the appellees have replied in detail to all the questions presented by appellant. This court has given the case careful consideration, materially assisted by the briefs of the respective

parties, and has reached the conclusion that no reversible error has been pointed out.

It is not to be expected that all the points raised will be discussed in this opinion, and we shall only advert to a few that are deemed of most importance. In the main, the suit resolved itself into one of boundary, and the trial court charged the jury that the burden of proof on that issue rested upon the plaintiff. Counsel for appellant vigorously assail this charge and contend that, under the facts disclosed by the record, the burden on the issue of boundary was not upon the plaintiff, but rested upon the defendants.

The testimony shows that in 1882 F. P. Knott purchased the surveys of land sued for and described in the plaintiff's petition from the State as part of the unappropriated public domain, paying therefor 50 cents per acre. These surveys were patented to Knott in 1883. The defendants claim under surveys made in 1873, for the Waco & North-western Railroad Company, the alternate sections of which surveys were by the constitutional law set apart as part of the public free school fund of the State. The individual defendants had contracted to purchase some of these surveys from the State in November, 1897, under the law then and now in force authorizing the Commissioner of the Land Office to sell such school lands. No patent had ever issued upon these surveys. Evidence was submitted tending to show a considerable conflict between these surveys and those claimed by the plaintiff, and as the plaintiff held under a patent and the defendants did not, but relied solely upon prior unpatented locations, counsel for the plaintiff contend that the burden of proof upon the issue of boundary rested upon the defendants. The parties filed a written agreement with reference to the venue of the suit and other matters referred to therein; and it is claimed on behalf of the appellees that the agreement referred to places the burden of proof upon the plaintiff.

We are not disposed to adopt this construction of the agreement, but have reached the conclusion that appellees' contention embodied in their second counter-proposition is correct. The proposition referred to asserts, "inasmuch as the appellant is the plaintiff to the action and claims under a junior location, the burden of showing that the land described in its petition does not conflict with the older locations in block H, was upon the appellant." The State's title to the alternate sections in block H, Waco & Northwestern Railroad surveys, held by the State in trust for the school fund and the title of the defendants who had contracted in the manner prescribed by law for the purchase of any of said surveys, secured as great a right and was as effectual as a title under the land laws of this State, as would have been the case if patents had issued thereon prior to the date of the patents under which the plaintiff claims. And this being the case, we can see no logical reason why the burden of proof did not rest upon the plaintiff upon the issue of boundary, as well as upon all other issues of title. Clark v. Hills, 67 Texas, 141; Scott v. Pettigrew, 72 Texas, 321; McKinney v. Baldwin,

14 Texas Civ. App., 12; Rosson v. Miller, 15 Texas Civ. App., 603. The cases cited hold that in boundary suits the burden of proof is upon the plaintiff. It may be true, as contended by appellants' counsel, that none of them show a state of facts in which a plaintiff claimed under a patent or grant, and the defendant under a mere location; but this court is of the opinion that the distinction referred to is unimportant when the plaintiff claims under a junior title; and especially is this true in a case like the present, where the lands claimed by the defendants under the prior location were part of the public free school fund until after the surveys claimed by the plaintiff were patented; and therefore could not, prior to that time, have been patented. The State can not issue a patent to itself nor to the school fund, and lands which have been legally segregated from the public domain and set apart for the benefit of the school fund are held by the State in trust for that fund by as perfect a title as can be acquired by patent or otherwise.

The plaintiff's surveys called for the north boundary of block H, Waco & Northwestern Railroad surveys, and among other special issues submitted by the court to the jury was the true location of the north boundary line of said block H. In response to this, the jury stated that said line could not be definitely located; but further stated that the respective surveys, those claimed by the plaintiff on one hand and the defendants on the other, were in conflict, the extent of which conflict could not be ascertained.

In response to other questions submitted, the jury by their verdict identified the northwest corner of survey 796, which is the northwest corner of block H; and also identified the northwest corner of survey No. 783, which is on the north boundary line of block H. The judge respected these two findings, and in addition thereto, in the additional findings filed by him, found that survey No. 1 was correctly represented on the original sketch of block H as conceded by all the parties. He also identified on the ground the northwest corner of surveys 122, 145, and 169, and made certain other findings of fact not necessary here to state; and with these findings, assisted by the two corners located by the verdict of the jury, as before stated, he located the north boundary line of block H.

At the time the case was tried, the statute required the judge, at the request of either party, to submit the case to the jury upon special issues; but further provided, in substance, that if there was no finding of the jury on any issue of fact necessary to render judgment, the judge himself should make a finding thereon; and neither party could complain of the failure to submit that issue to the jury unless the judge had been requested to submit it. As before stated, the judge did submit to the jury the question of the true location of the north boundary line of block H, and the jury responded that it could not be located by testimony deemed by them reliable.

In view of this finding by the jury appellant contends that the judge had no right to make a finding thereon himself as a basis for the judg-

ment.  This argument is plausible, because as a general proposition when a case is submitted to the jury it is not permissible for the judge to substitute his conclusions in reference to the facts for those of the jury as disclosed by the verdict.  But in this case it must be borne in mind that the jury also found that the plaintiff's surveys were in conflict with the older surveys owned by the defendants, the extent of which conflict could not be ascertained.

Now this being the situation, and the burden of proof resting upon the plaintiff to show the true location of the north boundary line of block H, which was the south boundary line of the plaintiff's land, unless the judge had pursued the course he did and established the disputed line himself, judgment should have been rendered against the plaintiff for all the land sued for.  Therefore, the plaintiff is not in a position to complain of the action of the court in disregarding the declaration of the jury that the true location of the line referred to and the amount of the conflict could not be ascertained.  A judgment upon such a verdict would not have awarded the plaintiff anything, whereas the judgment rendered after the judge had established the line in dispute awards to the plaintiff some of the land sued for.

The locations under which the defendants claim the land were made by the surveyors of Montague and Jack counties, respectively, and if those officers had any authority to make the locations and surveys, it was conferred upon them by an act of the Legislature dated November 6, 1866, entitled, "An act attaching certain counties therein named to the counties of Jack and Montague for judicial and other purposes." The State Constitution then in force contained the following provision: "Every law enacted by the Legislature shall embrace but one object, and that shall be expressed in the title."

It is urged in this court that under the constitutional provision referred to, the Legislature had no power under an act with the title reading as the title to the Act of November 6, 1866, to pass a law attaching any county to Jack or Montague County for surveying purposes. Two specific objections are urged, viz., that the words "certain counties" and "other purposes" are too general and do not meet the demands of the Constitution, the contention being that the title of the act, like the body thereof, should have specified Hardeman and Young counties, they being the counties in which the land in controversy was then situated; and in addition to stating that they were attached to Jack and Montague counties for judicial purposes, should have also designated surveying as one of the purposes for which they were attached.

After giving this question careful consideration, we have reached the conclusion that the law referred to should not be declared unconstitutional.  In discussing constitutional provisions similar to the one under consideration, Cooley says:

"The general purpose of these provisions is accomplished when a law has but one general object which is fairly indicated by its title.  To require every end and means necessary or convenient for the accomplish-

ment of this general object to be provided for by a separate act relating to that alone, would not only be unreasonable, but would actually render legislation impossible." Cooley Const. Lim., p. 173.

It is true the author in the same connection declares that the use of the words "other purposes," with a view to cover any and everything, whether connected with the main purpose indicated by the title or not, can no longer be of any avail where such constitutional provisions exist. It is quite apparent that the object of the act under consideration, as disclosed by its title, was to attach other territory to Jack and Montague counties. For what purposes could the Legislature attach other territory to these counties? Manifestly, for governmental purposes only. Therefore, while the title of the act does not use the word "governmental," that term is implied, and the members of the Legislature and the public doubtless understood the title of the act to mean the same as if the concluding part had read "for judicial and other governmental purposes." And with this meaning attached to it, it authorized the enactment of a law attaching Hardeman and Young counties to Jack and Montague counties, for all governmental purposes, including that of surveying. Nor do we think that it was necessary that the title of the act should specify the counties to be attached. The object of the law was to attach other territory to Jack and Montague counties for governmental purposes, and it was not necessary that the title should identify the territory to be attached. Snyder v. Compton, 87 Texas, 374; State of Iowa v. County Judge of Davis County, 2 Iowa, 280; Railway v. Potts, 7 Ind., 681; Hall v. Bunte, 20 Ind., 304; Brewster v. City of Syracuse, 19 N. Y., 116; Kurtz v. People, 33 Mich., 279; People v. McCallum, 1 Neb., 182. In Iowa v. County Judge, supra, the title of the statute was "An act in relation to certain State roads therein named." The act contained 66 sections, in which it established forty-six roads, vacated some already established, and provided for the relocation of others. The Iowa Constitution was identical with the constitutional provision in force in this State when the Act. of November 6, 1866, was passed. In an elaborate and instructive opinion, it was held that the title of the act was in substantial compliance with the constitutional requirement.

A careful reading of Cooley will disclose the fact that he does not condemn the use of the phrase "other purposes" in the title of a statute, when connected with the main purpose indicated by the title. One of the main purposes indicated by the title of the statute under consideration is to attach other counties to Jack and Montague counties for judicial purposes; and the expression "other purposes" is necessarily limited to and connected with the preceding words "attaching," etc. And supplying the implied word "governmental" before the word "purposes," makes all the purposes for which the new territory is to be attached harmonize with the specific purpose indicated by the term "judicial." Doubtless the title of an act reading "An act for the relief of Thomas Smith and for other purposes" would not authorize legislation on any

subject foreign to the relief of Thomas Smith, because the phrase "other purposes" would not be controlled by anything that precedes it. But in this case that phrase is limited by the preceding words "attaching," etc., and the implied word "governmental."

It is also claimed that the court erred in sustaining appellees' exceptions and striking out appellant's plea of estoppel, based mainly upon acts of the Land Department of the State. As the Commissioner of the Land Office had no authority at the time appellant and its vendors acquired their title to sell or otherwise dispose of lands belonging to the school fund of the State, the other members of the court are of the opinion that appellant can not plead his acts and conduct for the purpose of estopping the State and the defendants claiming under it in this case.

Without disputing the correctness of this view, the writer prefers to sustain the ruling of the court below upon the ground that the plea in estoppel failed to show that appellant would be injured or sustain any loss whatever if the estoppel should not prevail. The plea shows that appellant claims title to the land under deeds of general warranty from grantors not alleged to be insolvent, and as these warrantors are liable upon their covenants of warranty for the purchase money paid by appellant for the land, unless they are shown to be insolvent, it is not made to appear that appellant will ultimately sustain any loss. My views upon this subject are fully stated in Anderson v. Walker, 49 Southwestern Reporter, 937. It is true, the Supreme Court granted a writ of error in that case, and overruled the decision of this court on another point; but the ruling of this court on the question of estoppel as presented in that case was sustained, though the opinion of the Supreme Court does not in express terms approve or disapprove of all that is said in the opinion of this court on that subject.

It may be conceded that if Knott, one of the vendors under whom appellant claims, and the original purchaser from the State, acquired title by estoppel, the chain of title from him to appellant would vest the title so acquired in the latter; but the plea is essentially insufficient to show that Knott acquired such title, because it failed to show that he did not know, when he bought the land, the true location of the north line of block H, Waco & Northwestern Railroad surveys, and relied upon the acts, representations, and matters which the plea alleges were relied upon by appellant and its vendors, Tidball, Van Zandt & Co. If I am correct in the opinion that appellant's failure to allege the insolvency of its warrantors is fatal to its plea of estoppel, then it follows that the plea fails to show that its vendors Tidball, Van Zandt & Co., acquired title by estoppel, because it alleges that Knott, the patentee, conveyed to them by warranty deed, and does not allege the insolvency of Knott. The plea of estoppel shows that the warranties executed by appellant's vendors embrace and include the land in conflict and adjudged by the decree of the court below to appellees. If this be the case, appellant's vendors are obligated to refund the purchase money, and when this is

done, in so far as the plea of estoppel makes it appear, appellant will be in substantially the same condition as it was before it bought the land, and therefore will not have sustained any loss. Hence in the absence of averments of insolvency on the part of appellant's vendors, the plea fails to show ultimate injury to appellant; and therefore, in my opinion, the court properly sustained the general demurrer to the plea, which demurrer is embodied in subdivision (a) of the second paragraph of defendant's first supplemental answer, though denominated a special exception.

We have considered all the questions presented in appellant's brief, but it would extend this opinion beyond reasonable limits to write on each question separately. We think the charge of the court announced with reasonable fairness and correctness the rules of law applicable to the case, and that no error was committed in refusing special instructions, nor in ruling upon the admissibility of testimony. The jury's findings in response to special issues and the judge's findings of fact are supported by testimony and are adopted by this court as its findings of fact.

No reversible error having been pointed out, the judgment of the District Court will be affirmed.

*Affirmed.*

Application for writ of error was dismissed.