**ANDERSON et al. v. CORBETT et al.    (No. 8688.)**

(Court of Civil Appeals of Texas. Galveston. Jan. 20, 1926. Rehearing Granted July 1, 1926. Appellees' Rehearing Refused Oct. 7, 1926.)

1. **Boundaries** ⊂⊃3(6)—Where lines and corners of survey to north of disputed survey were long known, and definitely established, held that court might disregard call for corners of surveys to north of disputed survey

Where lines and corners of surveys to the north of disputed survey were long known, and definitely established, court might disregard call for corner of survey to the south of disputed survey, which corner was unknown to the surveyor, and adoption of which would greatly reduce the size of the survey, in view of statutes of limitations of three, five, and ten years.

2. **Boundaries** ⊂⊃37(1).

Evidence *held* to sustain finding that surveyor in locating survey intended to cover all vacant land between surrounding surveys called for, and that there could be no vacancy between that survey and another.

3. **Boundaries** ⊂⊃47(1)—Recital in certificate of state land commissioner that corrected field notes had been filed for specified acreage, and account adjusted thereon, held not to estop purchasers from claiming survey as originally located, in absence of evidence of their knowledge of filing.

Recital in certificate of state land commissioner that corrected field notes of survey had been filed and approved for specified acreage, and account adjusted on that acreage, *held* not to estop purchasers as against the state or individuals from claiming all of the survey as originally located and sold to them by the state, in absence of evidence that they had knowledge of the filing.

4. **Boundaries** ⊂⊃37(1).

Evidence *held* not to authorize finding that land was purchased in reliance of acceptance by others of corrected field notes, showing their holdings, in absence of evidence that parties knew of filing.

On Motion for Rehearing.

5. **Boundaries** ⊂⊃43.

Where petition placed boundaries of land claimed by plaintiffs, judgment for plaintiffs fixing boundaries otherwise would be reversed, though supported by evidence, since it conflicted with plaintiffs' pleadings.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Trespass to try title by Florence E. Anderson, individually and as executrix of the will and estate of L. A. Anderson, deceased, against M. R. Corbett, J. C. Hutcheson, Jr., and the heirs of D. H. Skinner, deceased. Defendants Corbett and Hutcheson filed a cross-action against plaintiff, the Skinner heirs, and others, and the Skinner heirs prayed recovery of title and possession to a tract of land. Judgment for the unnamed defendants in the cross-action and for defendants Corbett and Hutcheson against plaintiff and the Skinner heirs. Plaintiff and the Skinner heirs appeal. Reversed and remanded.

Geo. D. Sears, W. P. Hamblen, and E. B. Colgin, all of Houston, for appellants.

Woods, King & John, and A. D. Dyess, all of Houston, for appellees.

PLEASANTS, C. J. Under the pleadings upon which this case was tried, it is a suit by appellant Florence E. Anderson against appellees M. R. Corbett and J. C. Hutcheson, Jr., and the heirs of D. H. Skinner, deceased, in the form of an action of trespass to try title, to recover the title and possession of a tract

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of 319 acres of land in Harris county, known as the R. H. Barrow survey, and described in plaintiffs' petition by metes and bounds.

The appellees Corbett and Hutcheson answered by pleas of not guilty and pleas of limitation of three, five, and ten years, and by cross-action against plaintiff and the Skinner heirs set up title to a tract of land known and designated as section 2, H. T. & B. survey in Harris county, which the answer describes by metes and bounds, and for which they pray recovery of title and possession.

The defendants Skinner heirs answered the suit of plaintiff and its codefendants by disclaiming title to any of the land sought to be recovered from them not within the boundaries of a tract on the T. J. Stansbury survey in Harris county, described in the answer by metes and bounds. As to the tract described, they pleaded not guilty and the statutes of three, five and ten year limitation.

Owners of land on section 1, H. T. & B. survey in Harris county, were also made parties defendant in the cross-action of the defendants Corbett and Hutcheson, but, as no recovery was had against them, and no complaint is made on this appeal of the judgment in their favor, their pleading need not be stated.

The trial in the court below without a jury resulted in a judgment in favor of the appellees Corbett and Hutcheson against appellants Anderson and the Skinner heirs.

As indicated by the above statement of the pleadings, and conclusively shown by the record, the suit involves only the issue of boundary, or, more specifically, the location of the east line of section 2, H. T. & B. survey, and the west line of the T. J. Stansbury survey.

The decree entered by the trial court contains the following adjudications:

"It is further ordered, adjudged, and decreed that plaintiff Florence E. Anderson, individually, and as executrix of the will and estate of L. A. Anderson, deceased, take nothing as against any other party to this cause, and that as to the petition of said plaintiff Florence E. Anderson, individually, and as executrix and sole devisee of the will and estate of L. A. Anderson, deceased, that each and all of the remaining parties to this cause, whether styled defendants, cross-plaintiffs, or otherwise, go hence without day and recover their costs.
* * *

"It is therefore ordered, adjudged, and decreed that defendants and cross-plaintiffs M. R. Corbett and J. C. Hutcheson, Jr., do have and recover of and from each and all of the parties to this cause of action the land and premises described as follows, lying and being in Harris county, Tex., to wit: Being section No. 2, certificate 5/216, H. T. & B. Railway Company, the defendant and cross-plaintiff J. C. Hutcheson, Jr., owning in fee simple the northeast one-quarter of said section, and the defendant and cross-plaintiff M. R. Corbett owning in fee simple the remaining three-quarters of said section of land, said section of land beng described by metes and bounds, and

located on the ground as follows: [Here follows descriptive field notes of the survey, as located by the court.]"

As located by the judgment, section 2, H. T. & B. survey, covers and wipes out all of the junior Barrow survey claimed by appellant Anderson, and takes a part of the land on the Stansbury survey, also a junior survey, claimed by appellants Skinner heirs, and changes the contour of said survey in its western boundaries from that given in its original field notes and the map accompanying same made by the original surveyor.

The H. T. & B. surveys Nos. 1 and 2 were originally surveyed and located by J. J. Gillespie in April, 1862, and the field notes of each call for the other. The description and field notes of section number 2, made and returned by the original surveyor, are as follows:

"Said survey No. 2 is situated in the county of Harris about 25 miles N. 53 deg. W. from the city of Houston and bounded on the north by Hersh's & Hilliquist pre-emption, on the south by Houth & Moody, on the east by vacant land, on the west by No. 1.

"Beginning at a stake & md. in the north line of J. W. Moody and 256 vs. west from the N.W. corner of W. Houth's sur. of 640 acres.

"Thence north 2,254 vs. with the east line of No. 1 to the N.E. cor. of the same being the N.W. of this on A. Hersch south line. Thence east 172 vs. with Hersch south line to his S.E. cor. post. Thence north 47 vs. with his east line to the S.W. cor. of A. Hileghist's pre-empt. cor. post & mound. Thence east 1402 vs. with Hilleguist south line to cor. in prairie. Then south 2,301 vs. to cor. on the north line of W. Houth 640 acre sur. Thence west 1,574 vs. with Houths' & Moody's north line to the place of beginning."

The T. J. Stansbury survey was first located in 1868, but corrected field notes of the survey were returned to the land office in 1873. Accompanying these field notes was a letter from the surveyor in which he asked that the original survey be abandoned and the corrected field notes adopted, on the ground that the original survey conflicted with the Bellews league, which was titled land, and did not include all of the vacant land between surrounding surveys.

The field notes in the patent to the T. J. Stansbury survey, which was issued in December, 1874, describe the land as follows:

"In Harris county, on the N. side of Cypress creek about 24 miles N. 52° W. from the city of Houston by virtue of U. B. H. R. Ct. No. 12/70 issued by the Comr. of the Genl. Land Office March 8th, 1860, beginning at the N. W. cor. of the W. K. Hamblin sur. on the E. line of the Brewster sur. a stake A gum stump brs S. 2° E. 145 vrs; thence N. 266 vrs. pass the N.E. cor. of James Brewster on the S.E. cor. of the W. Houth at 2,166 vrs. in all to sd. Howeth's N.E. cor. thence west 126 vrs. along Howeth's N. line to the S.E. cor. of sur. No. 2 of H. T. & S. R. R. Co. Thence

north 2,301 vrs. along the E. line of sd. R. R. sur. to the N.E. cor. on A Hillegist's south line. Thence east 165 vrs. A. Hillegist's S. line to his S.E. cor. on M. H. Sundick's west line. Thence south 334 vrs. pass Bundick's S.W. cor. at 1,443 vrs. in all to J. S. Ricketts S.W. cor. Thence east 1,676 vrs. along the S. line of sd. Rickett to this S.E. cor. on the W. line of A Bodins sur. Thence S. 5½° E. 2353/10 vrs. along the W. line of A. Bodins sur. to his S.W. cor. on the N. line of Jas Stows survey. Thence west 820 vrs. along the N. line of the Stow sur. to his N.W. corner. Thence south 676 vrs. along the W. line of the Stow sur. to its S.W. cor. on W. K. Hamblins N. line. Thence west 1,120 vrs. along Hamblins N. line to the place of beginning."

There is no conflict in the evidence as to the true location of the Houth and Hamblin surveys on the south of the surveys involved in this suit, or the location of the Hilleguist and Hirsch surveys on the north of section No. 2, H. T. & B., nor the H. Raaz on the north of section No. 1, H. T. & B. survey.

If the location of the H. T. & B. surveys is made to conform to the calls in their field notes for the northern tier of surveys, the true location of section No. 2 is as found by the trial court. On the contrary, if the calls for the Houth and Moody surveys on the south be given controlling effect, the location of the survey made by the trial court cannot be sustained.

In support of the judgment, the trial court, upon the request of appellants, filed the following findings of fact:

"I. J. C. Hutcheson, Jr., owns the northeast one-quarter (¼) and M. R. Corbett the remaining three-quarters (¾) of section No. 2, certificate 5/216, H. T. & B. Railway Company, Harris county, Tex., which section was originally surveyed by J. J. Gillespie on April, 1862, and his field notes certified as correct by Will Powers, district surveyor, Harris district, on May 13, 1862, and field notes filed with and approved by the commissioner of the general land office of the state of Texas, in the same year.

"II. The present location on the ground of the Gillespie field notes is, in the opinion of the court, as shown by the metes and bounds of said survey No. 2, incorporated in the judgment in this cause, which is referred to and made a part of this finding.

"III. As a part of the same surveying, and at the same time, or approximately the same time, the said J. J. Gillespie surveyed section No. 1, H. T. & B Railway Company, which immediately adjoins section No. 2, above described, on the west. A photographic copy of Gillespie's plat of said surveys No. 1 and 2 attached to Gillespie's said original field notes of said survey No. 1 was introduced in evidence, is filed among the papers of this cause, and is referred to, adopted, and made a part of this finding.

"IV. The same J. J. Gillespie surveyed the J. S. Ricketts survey on June 15, 1868, the field notes of which survey have been introduced in evidence, are on file in the papers of this case, and are adopted and referred to as a part of this finding.

"V. There is no dispute about the present correct location of the J. S. Ricketts survey, the M. Bundick survey, the J. Duckworth survey, the A. Hillegeist survey, the August Hersch survey, or the H. Raaz survey, or the W. Howth survey, or the W. K. Hamblen survey. The southwest corner of the Bundick is at present located by the undisputed evidence as at a T-rail in the middle of a road, as shown by map made and testified to by the witness, Stimson, and the west line of the Bundick, in so far as is material, is at present marked by a fence. Almost exactly 3,000 varas west of the west line of the Bundick is the east line of the H. Raaz, now likewise marked by a fence. The south line of the Hersch is now marked by a public road, and the southeast corner of the Hersch is now fixed on the ground by a bend in the Cypress Top and Rose Hill road at the point where the Quads bridge and Winkler Schoolhouse road, coming from the east, meets said Cypress Top and Rose Hill road, but that none of the marks were on the ground when the maps were made. The west line of the J. W. Moody is not fixed on the ground by any evidence. The northwest corner of the W. K. Hamblin, which is the southwest corner of the T. J. Stansbury, is firmly fixed on the ground at a point in a north and south road from which a gum thicket on both sides of a branch bears south 2 degrees, east approximately 145 varas distant.

"VI. It is impossible to reconcile the field notes of surveys No. 1 and 2, H. T. & B., and of the Thomas J. Stansbury survey, with the older surveys to the north as located on the ground, and also with the surveys of the south as located on the ground. The calls for the north must yield to those on the south, or the calls on the south must yield to those on the north, in so far as surveys No. 1 and 2, H. T. & B., are concerned; and as to the Stansbury either the calls for the older surveys on the south or the west lines of the Stansbury will have to be a given a different conformation from that indicated by either the field notes or the plat of the Stansbury.

"VII. The said surveyor, J. J. Gillespie, believed, as he had the run of the lines of the J. S. Ricketts in 1868, that there was left a vacancy surrounded by the James Brewster, W. Howth, H. T. & B. No. 2, A. Hillegeist, M. Bundick, J. S. Ricketts, A. Bodin, James Stow, and W. K. Hamblin surveys of approximately 5,394,493 square varas, and the conformation of which was shown as set out in the plat prepared by the said Gillespie and field notes prepared by the said Gillespie, of the T. J. Stansbury photographic copy of which was introduced in evidence, and which is filed with the papers of this case, and is referred to and made a part of this finding. In 1872, and again in 1873, Gillespie surveyed the southern portion of this vacancy, beginning, at both times, his survey at the northwest corner of the W. K. Hamblin, as located on the ground, and as found above.

"IX. The certificate under which Gillespie surveyed the southern portion of said vacancy he had attempted to locate in part on lands in conflict with older grants and in part on the southern portion of said vacancy, and, when he was compelled to lift that portion of the

certificate, which he had located in conflict with older surveys, he then determined to enlarge the survey he had made on the southern part of the vacancy above described so as to fill the entire vacancy, and to locate the said major part of said certificate as the T. J. Stansbury survey, the boundaries of which are involved in this case, and which Gillespie intended to be entirely surrounded by older surveys.

"X. I find that Gillespie, being familiar, because of his own work on the ground, with the location on the ground of the Southern portion of the present T. J. Stansbury survey, and being familiar with the location on the ground of the surveys by which he intended to bound the T. J. Stansbury on the north, and not knowing how the surveys to the north were located with reference to the surveys on the south, did not, in September, 1874, actually run on the ground entirely around the T. J. Stansbury survey, but, with his knowledge and information before him, made the plat and field notes, certified copy of which is introduced in evidence, at that time believing that, as compared to the surveys on the north, those on the south were approximately 343 varas further east than it now develops from the evidence they were.

"XI. I find that the intention of J. J. Gillespie was simply to fill the vacancy, and that his intention should control, even though it results in giving the west lines of the Stansbury a conformation not given on his plat or by his field notes.

"XII. I find that there is no evidence in this case sufficient to estop J. C. Hutcheson, Jr., and M. R. Corbett as against R. H. Barrow, or his assignees, from having H. T. & B. survey No. 2 located on the ground according to the true location of the Gillespie field notes of 1862."

No patent has been issued to section 2, H. T. & B. survey, and appellees hold title under a contract of purchase from the state.

They introduced in evidence as their muniment of title a certificate from the commissioner of the general land office, showing their contract of purchase. This certificate contains the following recital:

"That corrected field notes of said section 2 were filed in this office June 22, 1907, and approved for 528.5 acres, and the account accordingly adjusted."

Appellees' cross-petition describes the land claimed by them as follows:

"Being section No. Two (2), certificate 5/216, H. T. & B. Railway Company, the plaintiff J. C. Hutcheson, Jr., owning in fee simple the northeast one-quarter (¼) of said section, and the plaintiff M. R. Corbett owning in fee simple the remaining three-quarters (¾) of said section of land, said section of land being described by metes and bounds, and located on the ground as follows:

"Beginning at the southeast corner of the H. T. & B. Railway Company, section No. 1, in the north line of the J. W. Moody survey, 256 varas west of its northeast corner, and 256 varas west of the northwest corner of the W. E. Howth survey; thence north 2,075.5 varas more or less to the northeast corner of

section No. 1, H. T. & B. Railway Company in the south line of the A. Hirsch survey; thence east 1,085 varas to the said A. Hirsch southeast corner; thence north 46½ varas with the east line of the said A. Hirsch survey to the southwest corner of the A. Hillegeist survey; thence east 946 varas to a point in the south line of A. Hillegeist survey, same being the northwest corner of the T. J. Stansbury survey; thence south with the most western west line of the said T. J. Stansbury survey 2,122 varas more or less to a point in the north line of said W. E. Howth survey for the southeast corner of the tract of land here described, same being 126 varas west of the W. E. Howth northeast corner; thence west with the north line of the said W. E. Howth survey at 1,765 varas, past the northwest corner of the said W. E. Howth survey for a total distance of 2,031 varas, to the place of beginning, containing 640 acres of land, more or less."

The judgment of the trial court describes the land adjudged to appellees as follows:

"Beginning at an iron pipe 4 feet high in the south line of the August Hillegeist survey, which is 165 varas west of another iron pipe in the west line of the M. H. Bundick survey, and in the fence line on the west of said Bundick survey and extending from the pipe first above described south 2,122 varas to an intersection with an extension of the northern and fenced line of the W. Howth survey; thence west at 217 varas the northeast corner of the W. Howth survey in the middle of a road, and in a dry gully, and continuing west with a fence along the northern line of the W. Howth survey, in all 1,574 varas to a point in said north fence line and 19 varas east of the east side of the Cypress Top and Rose Hill road, same being the S. E. corner section 1, H. T. & B. Railway survey; thence north 2,075.5 varas along the east line of said section No. 1 to its N. E. corner, in the south line of the August Hirsch survey in the middle of the Quads bridge and Winkler schoolhouse road, and 19.4 varas east of a prolongation of the East line of the Cypress Top and Rose Hill road; thence along the south line of the August Hirsch survey 172 varas, southeast corner Hirsch survey at bend of road and near the middle of the Cypress Top and Rose Hill road as it runs north between the Hirsch and Hillegeist surveys; thence north 47 varas in the middle of the Cypress Top and Rose Hill road to the south line of the August Hillegeist survey; thence east at 514 varas, more or less, pass an iron pipe, 1,402 varas in all, along the south line of the August Hillegeist survey, to the place of beginning."

We think the evidence is sufficient to sustain the finding of the trial court that there was no vacancy between section 2, H. T. & B. survey, and the T. J. Stansbury survey, and that section No. 2 was located on the ground by Gillespie in 1862, as described in the judgment of the court.

[1] Appellants concede in their brief that, if the H. T. & B. survey No. 2 and the Stansbury survey are located by the calls for the older surveys on the north, they will be

placed 600 varas further east than if located by the calls for Howth, Moody, and Hamblen surveys on the south. The evidence justified the findings of the court that Gillespie, at the time he surveyed and located the H. T. & B. surveys, did not know the lines and corners of the Howth and Moody surveys.

The lines and corners of the northern tier of surveys have been long known and definitely established by fences, public roads, and other marks mentioned in the findings of the court. If the location contended for by appellants is adopted, the survey owned by appellees will be greatly reduced in size. In this state of the evidence, the trial court was authorized to find that the call in the original field notes of section No. 2, H. T. & B. survey, for the Howth corner was a mistake, and to disregard the call and locate the survey by the calls for other definitely located surveys. Wilson v. Giraud, 111 Tex. 253, 231 S. W. 1074; Sellman v. Sellman (Tex. Civ. App.) 73 S. W. 48.

[2] We cannot understand how the land office ever accepted the survey showing a vacancy between the Stansbury survey and section 2, H. T. & B. survey. Both surveys were located by the same surveyor, the H. T. & B. survey, which was made for the public schools, being several years senior to the Stansbury, which calls for the east line of the older survey. The facts found by the trial court, it seems to us, overwhelmingly, if not conclusively, show that the surveyor in locating the Stansbury survey intended to cover all the vacant land between the surrounding surveys called for, and there could be no vacancy between that survey and section 2, H. T. & B. survey.

[3] We agree with the trial court in holding that the recital in the certificate of the land commissioner, introduced in evidence by appellees to show their ownership of the survey claimed by them, that corrected field notes of the survey had been filed in the land office June 22, 1907, and "approved for 528.5 acres, and appellees' account adjusted on that acreage," does not estop appellees from claiming title to all of the survey as originally located and sold to them. If the survey, as located by the trial court, contains more than 528.5 acres, appellees may yet be required to pay for the full acreage purchased by them, but they have not lost title as against the state to any land in the survey, which they purchased from the state by the action of the land commissioner in permitting the filing of corrected field notes with which appellees had no connection, and of which so far as the evidence shows they had no knowledge.

[4] We think it equally clear that the evidence does not authorize a finding that appellant Anderson purchased the land claimed by said appellant in reliance upon the acceptance by appellees of the corrected field notes mentioned in the certificate. Barrow, who located the supposed vacancy, and purchased it from the state a year before the corrected field notes of appellees' survey were filed, conveyed to appellant Anderson's decedent by warranty deed, and the evidence fails to show that at the time this conveyance was made either Anderson or appellees knew of the filing of the corrected field notes, and Anderson could not have relied on appellees' acceptance of those field notes in purchasing the Barrow survey. State v. Post, 106 Tex. 468, 169 S. W. 407; Childress County Land & Cattle Co. v. Baker, 23 Tex. Civ. App. 451, 56 S. W. 756; Sullivan v. State (Tex. Civ. App.) 164 S. W. 1123.

We do not think the description of the land adjudged appellees by the trial court shows a different tract of land from that described in appellees' cross-petition. The differences in the descriptions are more apparent than real. Both purport to describe a survey of 640 acres known and designated as section 2, H. T. & B. survey, adjoining and lying east of section 1 of said survey, north of the Howth and Moody surveys, and south of the Hillegeist and Hirsch surveys. The apparent differences in the two descriptions are largely, if not entirely, due to the fact that the description in the judgment begins at the northeast corner of the survey, while that in the petition begins at the southwest corner. If the field notes given in appellees' petition are followed from the beginning corner, they will include the land described in the judgment, with the possible exception of a small acreage in the northwest corner. There being no vacancy between this survey and the Stansbury survey, which is a junior survey, the court was authorized to fix the east line of appellees' survey in accordance with the original field notes, and appellees, under the description contained in their pleadings, were entitled to recover all of section 2, H. T. & B. survey, as originally located and surveyed.

We find no error in the record which requires or authorizes a reversal of the judgment, and it is therefore affirmed.

Affirmed.

On Motion for Rehearing.

[5] In a very vigorous and forceful motion for rehearing, appellants attack all of the material conclusions of fact and law contained in our former opinion affirming the judgment of the trial court. We deem it necessary to discuss only one of the complaints presented in the motion.

The sixth assignment presented in the motion complains of the following conclusion expressed in our original opinion:

"We do not think the description of the land adjudged appellees by the trial court shows a different tract of land from that described in appellees' cross-petition. The differences in the description are more apparent than real.

Both purport to describe a survey of 640 acres known and designated as section 2, H. T. & B. survey, adjoining and lying east of section 1 of said survey, north of the Howth and Moody surveys, and south of the Hillegeist and Hirsch surveys. The apparent differences in the two descriptions are largely, if not entirely, due to the fact that the description in the judgment begins at the northeast corner of the survey, while that in the petition begins at the southwest corner. If the field notes given in appellees' petition are followed from the beginning corner, they will include the land described in the judgment, with the possible exception of a small acreage in the northwest corner."

A further consideration of the pleadings and evidence has convinced us that we erred in this holding.

Appellees' cross-petition describes the land sued for by them by metes and bounds, and this description places the S. W. corner of their land at a point on the north line of the Moody survey 256 varas west of the N. W. corner of the Howth survey, and fixes their N. E. corner and the N. W. corner of the Stansbury survey at a point on the south line of the A. Hillegeist survey 946 varas east of the S. W. corner of that survey. The location of these lines and corners of the Moody, Howth and Hillegeist, as found by the trial court, are well known and established, and it is manifest that a considerable portion of the land awarded appellees by the judgment is not within the field notes given in appellees' petition. Having so fixed the boundaries of the land claimed by them, appellants could not have anticipated that appellees were claiming land east of these boundaries, and the judgment of the trial court fixing the location of the H. T. & B. survey No. 2 further east than the appellees' petition places it, while supported by the evidence, cannot be sustained, because it conflicts with appellees' pleadings. Roche v. Lovell, 74 Tex. 191, 11 S. W. 1079.

This conclusion requires that the motion for rehearing be granted, and the judgment of the trial court reversed, and the cause remanded, and it is so ordered.

Granted.