## HUMBLE OIL & REFINING CO. v. ROB-ERTSON et al.

### No. 10960.

Court of Civil Appeals of Texas. Dallas.

March 19, 1932.

Rehearing Denied April 23, 1932.

R. E. Seagler and Vinson, Elkins, Sweeton & Weems, all of Houston, and Wynne & Wynne, of Wills Point, for appellant.

Mack Taylor, of Fort Worth, and W. E. West, of Canton, for appellees.

JONES, C. J.

Appellant, Humble Oil & Refining Company, instituted this suit in the district court of Van Zandt county to try title to oil, gas, and other minerals in and to a tract of land situated in said county and described as a 42½-acre tract. Appellant holds under a lease from H. J. Ray and wife, and contends that the land described in such lease covers all of the land in controversy. Appellees, C. H. Robertson and C. H. Robertson Drilling Company, hold under a lease of a later date, describing approximately a 3-acre tract of land off of the west end of the tract inclosed under the Ray fence, and contends that such strip is not included in appellant's lease. The only disputed issue is one of boundary, and this dispute virtually hinges on the proper location of the southwest corner of the Ray tract of land. Such location, as a disputed fact in the evidence, was submitted to the jury on a special issue, found in favor of appellees, and a judgment entered in favor of appellees. From this judgment appellant has duly perfected its appeal.

The land in question is the northern portion of block 14 of the Nacogdoches county school land, situated in Van Zandt county. Block 14 consists of 120.7 acres of land. Immediately north of block 14 is block 15 of such school land, to the west of block 14 is block 13, and to the north of block 13 is block 16. The east boundary line of this school land is the east boundary line of the land in question. The northeast corner of the 42½-acre tract, according to its original field notes, is the southeast corner of block 15; the southeast corner is on the east boundary line of block 14 at a point 371 varas south of its northeast corner; the southwest corner is at a point 645 varas west from the southwest corner, and the northwest corner is at a point 371 varas north of said southwest corner to a point in the south boundary line of block 15, and at the southwest corner of block 15 and the northwest corner of block 14. The original field notes describe bearing trees at each of these corners.

The evidence is undisputed that the bearing trees on the northeast and southeast corners have disappeared, and does not disclose their existence later than about June 1, 1907, as a witness for appellees testified to their existence at that time. As to whether one of the two bearing trees at the southwest corner is in existence rests on disputed evidence, and it is undisputed that no bearing tree now stands at the northwest corner.

The description by course and distance, without reference to the bearing trees, as given in the original field notes and all subsequent conveyances of the land, is: Beginning at the southeast corner of block 15 in the east boundary line of the Nacogdoches school land; thence south 371 varas; thence west 645 varas; thence north 371 varas; thence east 645 varas, to the place of beginning. There is thus described a rectangular tract of land in which the east line and the west line is each given at 371 varas in length, and in which the north line and the south line is each given at 645 varas in length. A rectangle with these dimensions would inclose a tract of 42½ acres of land. The 42½-acre tract, as fenced for a long period of time, inclosed approximately 45½ acres of land, or an excess of about 3 acres. This is caused by the north fence line and the south fence line each being 41½ varas in excess of the call of 645 varas in giving the distance of these lines.

The lease under which appellant owns by assignment from the original lessee describes the land as follows: "Being 42½ acres of the Nacogdoches School Land being the Land described in a deed from Mrs. Lara Oliver et al to H. J. Ray and described as follows: Beginning at the Northeast (Southeast) corner of Block 15 on EBL of same 2250 vrs of the Northeast corner of same; thence south 371 vrs; thence west 645 vrs to corner; thence north 371 vrs. to corner; thence east 645 vrs to beginning and being more fully described in said deed to Lara Oliver to R. H. Ray. Said deed dated December 26, 1927,

and reference is hereby made to said deed for complete description and said deed is here made a part hereof."

The land is described in the deed of Mrs. Lara Oliver to H. J. Ray, which is made a part of the lease description, as follows: "Beginning at the southeast corner of block No. 15, a subdivision of said labor, on east boundary line of same, at 2250 vrs of the northeast corner of same; thence south 371 vrs to corner on which an elm brs north 33 9–10 vrs; the same being 5 in. in diameter and a black walnut 4 in. in diameter bears south 4½ west 2 3–10 vrs; thence W.W.W. 645 vrs to stake from which a P. O. 16 in. in diameter bears south 56 east 5 8–10 vrs, do. 16 in diameter brs north 37 east 11 vrs; Thence north 371 vrs. to corner of block No. 15; thence east 645 vrs to the place of beginning containing 42½ acres of land."

Block 14 of the Nacogdoches county school land is described in the patent as follows: "Beginning at the S. E. corner of block 15 on the east line of original survey 2250 vrs N. E. corner of same; thence west 645 vrs; thence south 1000 vrs to corner; thence east 645 vrs to said east line; thence north 1000 vrs to the place of beginning."

Block 15 of such school land, lying immediately north of block 14, is described as follows: "Beginning on the east line of said grant at the northeast corner of said block No. 14 sold to J. W. Childers and 2250 vrs south of the Northeast corner of said grant; thence west 645 vrs to corner from which a B. J. brs north 23 east 2 4–10 vrs on oak brs south 10 west 11 4–10 vrs; Thence North 1100 vrs to corner from which a B. J. brs south 56 west 4 6–10 vrs; And another B. J. brs south 74 west 6 7–10 vrs; Thence east 645 vrs to corner said east line; Thence south 1100 vrs with same to the beginning."

It thus appears that the north line of block 15 and the south line of block 14 are each described as running east and west 645 varas; that the south line of block 15 and the north line of block 14 is a common line, and described as running east and west 645 varas; that each line calls for a corner at its termination, and that there are no bearing trees mentioned in the field notes to block 14, but that there are bearing trees mentioned in the field notes to block 15; that the deed from Mrs. Lara Oliver, made a part of the description of appellant's lease, calls for bearing trees at each corner, and that the bearing trees called for at the northeast corner and at the northwest corner are the same bearing trees called for in the field notes to block 15, locating the southeast and southwest corners of such block; that is, the field notes to these respective conveyances of the 42½-acre tract identify the northeast corner of such tract with the southeast corner

of block 15, and identify the northwest corner of such tract as the southwest corner of block 15.

There is no dispute about the location of the southeast corner of the 42½-acre tract, though no trace of the bearing trees at such corner can now be found. Black, a surveyor of long experience, testified, in substance: That on the occasion of the sale of the 42½-acre tract by the Busby heirs through their guardian, J. H. McKenzie, to W. R. Stewart, he located this corner by a survey at the instance of Stewart, and that the two bearing trees, called for in the original field notes of this 42½-acre tract, were then standing. He further testified that he ran west from this southeast corner the 645 varas, called for in the field notes, that he there discovered one of the bearing trees called for in the original field notes, but that the other bearing tree was not then standing, and that he located the southwest corner of this 42½-acre tract at a point 645 varas on a line due west from the southeast corner. The witness further testified that he did not run this line further than 645 varas; that the western fence line on this tract was 35 or 40 varas further west from where he established said southwest corner; that from this corner he set his instruments due north; though he did not run that line, he saw the bearing trees called for in the original field notes at the northwest corner, which is at a point due north from where he found the southwest corner. The deed from McKenzie, as guardian, is of date June 2, 1907, and hence this survey must have been made some time the latter part of May or the first days of June, 1907. The witness further testified that he recently visited the place where he established the southwest corner of this tract, and the bearing tree was not there, but that there was a post oak stump at approximately the same place where the bearing tree had stood.

W. M. Rawles, a witness for appellant, and a qualified surveyor in its employ, testified to running this survey about a year previous to the trial of this case, and again about six months previous thereto. He also testified to having done a great deal of surveying in that community, and that he was familiar with, and had surveyed, the various blocks of land contiguous to and near the land in question. His testimony is to the effect that he began his survey at the northeast corner of the 42½-acre tract of land and ran south to the southwest corner; that there were no bearing trees then in existence at either of these corners, but he showed that he was able to and did locate both of such corners; that from the southeast corner of said tract he ran due west 645 varas, and then hunted diligently for the bearing trees, but failed to find any of them, or any stump that would correspond to a bearing tree, named in the

field notes; that at the time he made the survey there was a narrow lane, about 15 feet wide, between the Ray land and the land immediately west of Ray in block 13; that he ran west 41½ varas further to a point about 3 feet west of the west fence line of this land, at this point discovered a gun barrel that had been driven in the ground; that he then searched for bearing trees and found an oak about 24 inches in diameter covered with poison ivy; that he removed the poison ivy, discovered what was a surveyor's cross or "X" on this oak tree; that such tree was at the distance, called for in the field notes, from the gun barrel, and varied in direction only about one degree; that he could discover no other bearing tree, though he made a close search for same, and also for stumps or roots that might have remained in the land from such bearing tree, in the vicinity where same should have been located; that from this gun barrel he ran north 371 varas, as called for in the field notes, and again searched for bearing trees, and found the remains of the burnt stump of an oak tree that corresponded in position to one of the oak bearing trees in the field notes; that he could find no other trace of a stump that would correspond to the other bearing tree called for; that he then ran east to the place of beginning at the northeast corner of the tract. This surveyor located the southwest corner at the point where the gun barrel was driven into the ground, and placed the northwest corner 371 varas due north from this point.

The witnesses who owned the land adjoining at the time the lane on the west side of the 42½-acre tract of land was opened testified in effect that, in order to open the lane, the fence on the Ray land, then owned by Mrs. Oliver, was moved east about 3 feet; that, in order to mark the point of the southern termination of this fence, before it was moved, a gun barrel was driven into the ground by one of them; that it was not driven for the purpose of locating the actual corner of the 42½-acre tract, but for the purpose of locating the corner of the fence as it originally stood.

J. W. Bateman, for over 20 years the county surveyor of Van Zandt county, testified to examining the tree just previous to the trial, pronounced by the witness Rawles to be a bearing tree to the southwest corner of the 42½-acre tract, and that he discovered the dim "X" on said tree and also two hacks above the "X" and one below. Rawles did not discover these hacks. One or two other witnesses testified to making out the cross on the tree. Other witnesses for appellees testified that they had examined the tree and could discover no "X," but only one mark running diagonal across the bark of the tree, but no cross-mark whatever.

It is undisputed evidence that, if the southwest corner of the tract of land be located where the witness Black located it in 1907, and the northwest corner be located 371 varas due north of such southwest corner, the boundary lines of this tract of land would inclose 42½ acres of land; on the other hand, if the southwest corner of this tract of land be located 41½ varas west of where Black located it, and at a point where the gun barrel is driven in the ground, and where the witness Rawles located such corner, and if the northwest corner of the tract be located at a point 371 varas due north of the gun barrel, the tract of land would contain approximately 45½ acres of land, or about a 3-acre excess. It is this excess, taken from the west side of the 42½-acre tract as it is fenced, that is in dispute. Appellees have not favored this court with a brief.

██ It appears from the foregoing statement that the true location of the southwest corner of the tract of land is the controlling fact in this case, and that such location rests on a disputed issue of fact. The court clearly and succinctly submitted this disputed issue of fact by submitting to the jury the question as to whether the true location of the southwest corner was at the point where the gun barrel was driven into the ground, and the jury found on the disputed evidence that it was not. Such finding is binding upon this court; it being sustained by direct and positive evidence of one witness and by some corroborating facts detailed by other witnesses. Blum Milling Co. v. Moore-Seaver Grain Company (Tex. Com. App.) 277 S. W. 78; Merrill v. Louisiana Ry. & Nav. Co. (Tex. Civ. App.) 4 S.W.(2d) 568; 3 Tex. Jur. § 768 p. 1096, and authorities cited in notes to this section.

Appellant presents other assignments of error in reference to the admission of certain evidence over a proper objection by appellant, or the refusal to admit certain evidence over proper objections by appellees. We have carefully examined all such assignments, with the result that we do not think they present reversible error, and they are overruled. It is the opinion of this court that the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.

## On Motion for Rehearing.

In its motion for rehearing, appellant calls our attention to the following finding of fact which we have concluded, after a closer review of the witness' evidence, was error on our part. In the original opinion, we found that the witness W. M. Black, in a survey of this land in 1907, "saw the bearing trees called for in the original field notes at the Northwest corner which is at a point due

North from where he found the Southwest corner."

This finding was based on the evidence of the witness Black, who had testified that, on the purchase in 1907 of the 42½ acres of land whose boundaries are in dispute, he surveyed the land, and found the northeast and southeast corners from the bearing trees called for in its original survey, and that from the southeast corner he ran directly west 645 varas, where he stopped, and on search found one of the bearing trees called for in the original survey of the tract, and located the southwest corner at this point. He then testified: "I did not survey the North line of block 14 of the Nacogdoches County School land at this time, I did not run it. I did not run it the other time when I originally surveyed it. When I got to that corner there I just started the instruments down, looked down there a few steps and found two or three marked trees that I supposed was the first survey made and then went on down."

We erroneously concluded that the "two or three marked trees" were on the northwest corner. After a closer review of this witness' testimony, we have concluded that the witness referred to the marked trees standing at the southeast corner, and not to the marked trees standing at the northwest corner. The entire testimony of this witness is in confusion, due probably to the fact that he was testifying from a map before him, and, instead of designating points referred to, so that their locations would be intelligible in the record, merely used such expressions as "there," "at that point," etc. We therefore state, as a finding of fact, that there were no bearing trees found by the witness Black where the northwest corner of the 42½-acre tract would be located. Its location must be determined by course and distance from the southwest corner. This correction does not affect the disposition made of this case.

It was our view, as expressed in our original opinion, that the true location of the southwest corner rested on disputed evidence, and that such location was clearly a jury issue. If the jury accepted, as it did in its findings, the location of such corner as found by the witness Black, and there being no natural objects then in existence locating the northwest corner, the course and distance called for in the original survey from the southwest corner necessarily located the northwest corner at a point in the north line of the 42½-acre tract due north from this southwest corner.

We have carefully examined the other grounds of the motion for a new trial, with the result that we are of the opinion that the motion should be overruled, and it is so ordered.

. Overruled.