**MID–KANSAS OIL & GAS CO. et al. v.
BURTON et al.**

No. 4499.

Court of Civil Appeals of Texas. Texarkana.
June 13, 1935.

Rehearing Denied Sept. 12, 1935.

Cary M. Abney, of Marshall, R. L. Benoit, of Shreveport, La., and Futch & Weldon, of Henderson, for appellants.

Ramey, Calhoun & Marsh, of Tyler, Robt. F. Higgins, of Houston, and Clifford Stone, of Henderson, for appellees.

HALL, Justice.

Appellees brought this suit against the appellants and numerous other parties for the title and possession of a tract of land comprising 10.7 acres of land, a part of the Cadena League in Rusk county, Tex. All the parties defendant in the lower court either disclaimed or defaulted, except the Mid-Kansas Oil & Gas Company, B. H. Rogers, and Roy Mullican. The appellees' suit was in trespass to try title. They alleged their title by limitation to the land in controversy; their contention being that the 10.7 acres in controversy was not included within the boundaries of their deed from Menefee, their grantor. The appellants answered by general demurrer, general denial, plea of not guilty, and that the land in controversy was included in the oil and gas lease and mineral deed under which they held, and if not so included in said lease and mineral deed, it was the intention of the parties that it be included, and in this connection they prayed for reformation of the lease and mineral deed so as to include within the boundaries thereof the land in controversy so as to make the said mineral deed and lease conform to the in-

tention of the parties. As said above, this was denominated a suit in trespass to try title, but in fact it is a boundary suit in which it was sought to fix the true east boundary line of the Burton 140-acre tract of land.

The Burton tract of 140 acres of land is block 4 of the Menefee subdivision of a 380-acre tract of land. Immediately east of block 4 was block 3 of the same subdivision. The southeast corner of block 4, and the southwest corner of block 3 were identical. In 1878 Menefee and wife conveyed to Duncan Preston 200 acres of the 380-acre tract, which is described as follows: "Two hundred acres off of the Pena League, beginning at the South Boundary Line of said League, and at the S. W. corner of a 380 tract set apart to Alice Menefee in the division of the lands of the estate of Malinda Strickland, deceased, a Post Oak 2½ inches in diameter brs. N. 17 E. 3 vrs. a Black Jack 4 vrs. distant; thence East 1057 vrs. to a corner, a Red Oak 30 in. dia. brs. E. 17 vrs.; thence North 1072 vrs. to corner, a Black Jack 18 in. dia. brs. S. 54 E. 3 vrs. distant, a Black Jack 10 in. dia. brs. N. 50 E. 3 vrs. dist.; thence W. 1057 vrs. to corner on McWilliams Creek, a birch 20 in. dia. brs. W. 10 vrs. dis.; thence South 1072 vrs. to the beginning."

The Burton tract is the south 140 acres of this Preston 200 acres. In 1915 Menefee and others conveyed to G. W. and H. C. Burton the 140 acres of land out of which this controversy grew, which tract is described as follows: "Beginning at the S. W. C. of a 380 acre tract set apart to Alice F. Menefee in the partition of the estate of Joshua and M. C. Strickland, deceased; thence N. 750 vrs. with its West line to SWC of John Mason's 60 acre tract; thence East 1057 varas to the SEC of said 60 acre tract on the W. line of John Mason's 40 acre tract; thence S. 750 vrs. to the S. line of said 380 acre tract at the SWC of Block 3 in the division of the estate of E. M. Menefee and his deceased wife, Alice F. Menefee; thence W. 1057 vrs. with said line to the beginning, containing 140 acres, more or less."

In 1929 the Burtons executed an oil and gas lease to one Weaver, using the same field notes as contained in the deed from Menefee to them. This oil and gas lease was later assigned to and is now held by appellant, Mid-Kansas Oil & Gas Company. B. H. Rogers and Roy Mullican held certain royalty interests under this 140-acre tract, which are described by the same field

notes as contained in the Burton 140-acre tract. It will be noted that the south boundary line of the Burton 140-acre tract is identical with the south boundary line of the Preston 200-acre tract and of block 4 of the Menefee partition, and that the three tracts of land had a common southeast corner and a common southwest corner, and the length of the south line is 1057 varas.

The trial court submitted three special issues to the jury, which are:

"No. 1: From a preponderance of the evidence in this case which of the lines designated 'A' and 'B' on the plats introduced in evidence or a line through a post oak tree referred to in the evidence you find to be the true and correct east boundary line of the purported 140 acres G. W. and H. C. Burton tract of land in the Cadena Survey in Rusk County, Texas?"

Answer: "Line 'A.'"

"No. 2: Do you find from a preponderance of the evidence in this case that it was the agreement of the parties to the oil and gas lease dated October 30, 1929, executed by G. W. Burton, H. C. Burton and wife, Mrs. Ella Burton, to R. M. Weaver, Jr., and recorded in Book 145, page 309 of the Deed Records of Rusk County, Texas, that said lease should cover and apply to all lands owned by lessors, situated on the J. B. Cadena Survey and lying west of the boundary line in dispute in this case?"

Answer: "No."

"No. 3: Do you find from a preponderance of the evidence in this case that it was the agreement of the parties to the mineral deed dated April 14, 1931, executed by G. W. Burton, H. C. Burton and his wife, Mrs. Ella Burton, to B. H. Rogers and recorded in Book 187, page 242 of the Deed Records of Rusk County, Texas, should convey the undivided interest therein stated in the minerals under all lands owned by the grantors on the J. B. Cadena Survey and situated west of the boundary line here in controversy?"

Answer: "No."

It will be noted that the first special issue had to do with the location of the true and correct east boundary line of the Burton 140-acre tract; the last two issues had to do with the right of appellants to a reformation of the instruments under which they hold so as to include the land in controversy. These issues were answered by the jury favorably to the appellees; the trial court entered judgment for appellees for 7.67 acres of land, and from this judg-

ment appellants prosecute their appeal to this court.

In their first proposition, appellants contend that the evidence is insufficient to support the jury's answer that line "A" was the true and correct east boundary line of the Burton tract of land. The controversy in this case centered around the proper location on the ground of the correct east boundary line of the Burton land. Appellees contended that line "A," as shown on their plat introduced in evidence, was the true east boundary line of the Burton land. Appellants contended that it was further east at or near the line marked "B" on appellees' plat and near the fence inclosing the Burton land on the east. Land, the engineer, as well as other witnesses for appellees, testified that there was no witness tree at a point 1,957 varas east of the southwest corner of the 140-acre tract of land; that to the north from this point was an old fence row containing bois d'arc trees; that there was a ridge in the land where the bois d'arc trees were growing, and that to the south of these bois d'arc trees was a sweet gum with old wire marks on it. Appellees' testimony showed further that if a line were projected from the point on the south line of the Burton tract, 1,057 varas from its southwest corner towards the north so as to coincide with the east boundary line of the Preston 200-acre tract, black jack stumps corresponding with the location of those called for at the northeast corner of the Preston 200-acre tract would be found, and that this Preston northeast corner as located by the projection of this line would be found to be in black jack timber; and that the point contended for by appellants as the northeast corner of the Preston 200-acre tract would be located in swampy land where no black jacks were found to be growing.

The appellants contended that when the south line to the Burton 140-acre tract was projected east about 65 varas from the point of 1,057 varas east of the southwest corner of the Burton 140-acre tract, a stump hole containing red oak roots at the proper distance for a witness tree from the southeast corner of block 4, which was also the southeast corner of the Burton 140-acre tract and the southwest corner of block 3 of the Menefee Subdivision. Appellants' testimony further shows that to the north of the corner claimed by them as the southeast corner of the Burton land was found a large post oak tree with surveyor marks on it showing it to be a line tree. However,

witnesses for appellees testified that there were no marks on this post oak tree. Appellants contended further that block 4 called for an adjoinder at its southeast corner with block 3 at its southwest corner, and that this adjoinder was effectuated at a point near the stump hole said to contain red oak roots.

The testimony was sharp and conflicting in reference to these objects on the ground as tending to establish the location of the Burton true east boundary line. Numerous witnesses were brought forward by each party, and much detail testimony was introduced as to the true location of the east boundary line of the Burton land. The trial court summed this dispute in special issue No. 1. In this regard, we think he was correct. From a careful examination of the evidence in this voluminous record, we are convinced that there was ample evidence to support the jury's finding. Petty et al. v. Paggi Bros. Oil Co. et al. (Tex. Com. App.) 254 S. W. 565; Antone v. Hoffman (Tex. Civ. App.) 256 S. W. 656; Kirby Lumber Co. v. Adams (Tex. Civ. App.) 291 S. W. 279; Humble Oil & Refining Co. v. Robertson et al. (Tex. Civ. App.) 48 S.W. (2d) 713; Id. (Tex. Com. App.) 76 S.W. (2d) 132.

We are not unmindful of those authorities which hold that a call for an adjoinder will prevail over a call for course and distance. However, we are of the opinion that when the location of the place on the ground of the adjoinder is in dispute, then its location becomes a fact issue to be determined by the trier of the facts.

We think there is no merit in the contention that special issue No. 1 submits more than one disputed fact issue. The ultimate issue of fact involved in this case, aside from the question of the reformation of the oil, gas, and mineral deed, is the true and correct east boundary line of the Burton land. This was the ultimate issue the trial court was endeavoring to solve. The fact that the trial court asked in the same issue which of the three lines contended for by the parties constituted the true and correct line is not error. Still et al. v. Barton et al. (Tex. Civ. App.) 76 S.W.(2d) 783. If the jury had answered that line "B," as shown on appellees' plat, or that the line through the post oak tree was the true and correct east boundary line of the Burton land, the trial court would undoubtedly have entered judgment for the appellants. It is true that the reference in the special issue

to "a line through a post oak tree referred to in the evidence" is briefly stated, but when taken in connection with the evidence in reference thereto we think it is sufficient. We have carefully examined every line of testimony in this record containing 696 pages, and we find that only one post oak is referred to therein through which a land line runs. The testimony shows that this tree was fourteen or eighteen feet west of the fence now on the east line of Burtons' land, and about two-thirds the distance from his southeast to his northeast corner. This tree is described by appellants' witnesses as having three hacks on the north side and three hacks on the south side, showing that the east line ran north and south through this tree. We do not think the jury could have been misled by the reference to this line in special issue No. 1.

■ The contention is made that the line in controversy cannot be definitely located on the ground as either line "A" or line "B." We can see no merit in this contention. The evidence shows and appellees' plat discloses that line "A" is 1,057 varas east from the west line of the Burton tract. The location of this west line is undisputed. It is marked by a wire fence. Line "B" is 60⅓ and 54½ varas, as shown by appellees' plat, distant at its southern and northern extremity, respectively, from line "A" and its course is south 0.28 E. Thus it seems to us that a surveyor could easily locate and lay out this 7.67-acre tract of land lying between lines "A" and "B." Henderson v. Nelson (Tex. Civ. App.) 284 S. W. 318; Watkins v. Hines (Tex. Civ. App.) 214 S. W. 663.

■ Appellants contend further that the trial court committed error in the submission of special issue No. 1 in which he referred to the Burton tract of land as 140 acres; and, further, because of the reference in said issue to lines "A" and "B" as shown on appellees' map. We are of the opinion that there was no error in this, for the reason that throughout the evidence the Burton tract of land was referred to as a 140-acre tract. This, no doubt, was done to distinguish it from another tract of land owned by Burton containing 100 acres of land which lay south of the land in controversy. We think the court was correct in referring to the Burton 140-acre tract of land in special issue No. 1 in the same manner as shown by the evidence of both parties so that the jury would understand the particular tract of land to which the court

was referring. As stated above, it is shown by the evidence in this record that line "B" on appellees' plat was practically identical with the true and correct east boundary line of the Burton 140-acre tract as contended for by the appellants, and had the jury found that line "B" was the true and correct east boundary line, it would, in our opinion, have warranted a judgment for appellants. We find no error in this action on the part of the trial court in referring to appellees' plat which is introduced in evidence to identify the lines in controversy. The jury were entirely free to find either line referred to in said special issue as the true and correct east boundary line of the Burton land. The trial court did not in any manner comment on the evidence in submitting this special issue. Still v. Barton, supra; McDonald v. McCrabb, 47 Tex. Civ. App. 259, 105 S. W. 238.

■ Appellants contend that the term "true and correct East boundary line" is a technical term, and for that reason should have been defined by the court. With this contention, we do not agree. It seems to us that this term is so simple that to attempt to define it would be to complicate it. We cannot comprehend how any person could misunderstand the meaning of this term. In the case of Dallas Ry. & Terminal Co. v. Bankston (Tex. Com. App.) 51 S.W.(2d) 304, 309, opinion by Judge Sharp, it is held that such terms as "negligence," "ordinary care," "contributory negligence," and "proximate cause" should be defined by the trial court. "However, the terms 'vigilant watch' and 'in the shortest time and space possible' are not such legal terms that call for such explanations and definitions thereof to enable the jury to properly pass upon and render a verdict on such issues. In our judgment, they are ordinary words of simple meaning; that they are commonly used; that any ordinary person would readily understand their meaning; and they are not terms which in law have a distinct fixed meaning. To require explanations and definitions of terms already clear would lead to an absurdity and defeat the very purpose for which article 2189 was enacted." It was held by the Supreme Court of Indiana in Anderson v. Ackerman, 88 Ind. 481, 490, that the phrase "true and complete" used in the Civil Code of that state were not technical words. Owens v. Navarro County Levee Imp. Dist., 115 Tex. 263, 280 S. W. 532; Temple Lumber Co. v. Felts (Tex. Civ. App.) 260 S. W. 228; Lomax v. Rowe (Tex. Civ. App.) 3 S.W.(2d) 498.

 Error is assigned at the action of the trial court in failing to give special charges requested by appellants. There were six of these special charges, all of which were similar in verbiage and referred to the same subject-matter; that is, the relative dignity of calls in a deed. The trial court selected one of these special charges and gave it in connection with special issue No. 1 as explanatory thereof. The special charge is as follows:

"You are charged that the following rules are given you for guidance in making your answers to Special Charge No. 1:

"Calls for surveys are important in the following order: (1) Calls for natural objects. (2) Calls for artificial objects. (3) Calls for courses and distances.

"But neither of the above absolutely control any other class where such other calls more truly indicate from the evidence the true locality of a boundary in controversy.

"In determining the location of a disputed boundary line the footsteps of the surveyor who first ran the disputed line should be followed as far as the same can be identified and established by the evidence.

"In determining the location of a disputed boundary line the object and purpose of all rules is to determine the true location of the survey and to establish the lines and corners as they were originally located and established by the surveyor on the ground, if they were so established.

"Given as a part of the law in this case at the request of the defendants.

"R. T. Brown, Judge."

We do not think the trial court was called upon to give all these special requested charges for the reason that it would give undue emphasis to the same matters contained in all of them. We do not think the appellants can complain at the action of the trial court in refusing all their special charges except one. As said in Texas Jurisprudence, vol. 24, p. 501: "Where several instructions upon the same subject were requested a party may not complain because the court selected and gave the one which was the least favorable or specific." St. Louis S. W. Ry. Co. of Texas v. Haney (Tex. Civ. App.) 94 S. W. 386; Fidelity Phenix Fire Ins. Co. v. Sadau (Tex. Civ. App.) 178 S. W. 559; Texas Employers' Ins. Ass'n v. Pierce (Tex. Civ. App.) 254 S. W. 1019; Chicago, R. I. & G. Ry. Co. v. Steele (Tex. Civ. App.) 264 S. W. 503; Galveston, H. & S. A. Ry. Co. v. Neville (Tex. Civ. App.) 272 S. W. 597; St. Louis S. W. Ry. Co. v. Bishop (Tex. Civ. App.) 291 S. W. 343, and cases there cited.

We have examined all other assignments brought forward by appellants, and the same are respectfully overruled, because we do not think they present error.

Therefore, the judgment of the trial court is in all things affirmed.