**HUMBLE OIL & REFINING CO. et al. v. OWINGS et al.**

**No. 13888.**

Court of Civil Appeals of Texas, Fort Worth.

March 31, 1939.

Rehearing Denied May 12, 1939.

W. H. Francis and Walace Hawkins, both of Dallas, and Wilkinson & Wilkinson, of Mt. Vernon, for appellant Magnolia Petroleum Co.

J. A. Ward, of Mt. Pleasant, and Nelson Jones, of Houston, for appellant Humble Oil & Refining Co.

Lee & Porter and Edward A. Brown, all of Longview, for appellees Reubin Owings and others.

SPEER, Justice.

Reubin Owings and twenty-two others instituted this suit, in the District Court of Franklin County, Texas, against Humble Oil & Refining Company and sixty-two other defendants, including Magnolia Petroleum Company, in form of trespass to try title to 4.45 acres of land, a part of the Orlando James Survey. The action in fact is one to determine a boundary line between the McKinney & Williams and the Orlando James Surveys. The location of that line, shown to be the east boundary of the McKinney & Williams, and the west boundary of the James, will determine the question at issue.

Plaintiffs' petition described the tract in controversy as follows:

"Beginning at the Northeast corner of the McKinney and Williams Survey on the most Easterly West boundary line of the Orlando James Survey;

"Thence East 64 feet (23.04 varas) to a fence line on the West side of a public road;

"Thence with the fence line along West side of said public road South no degrees 25 minutes East 2638.9 feet (950 varas) to corner.

"Thence west 83 feet (29.88 varas) to the Northeast corner of the F. Dyer Survey, which corner is in the aforesaid Orlando James line and is also the Southeast corner of the McKinney and Williams Survey;

"Thence North along the EBL of the McKinney and Williams Survey and the most Easterly WBL of the Orlando James Survey 2638.8 feet (950 varas) to the place of beginning and containing 4.45 acres of land."

Allegations were made of facts which, if proven, would entitle plaintiffs to recover under the ten years limitation statute.

Humble Oil & Refining Company and Magnolia Petroleum Company, and other defendants, answered with pleas of not guilty and general denials. There are other defendants who filed similar answers; others filed disclaimers, while there were some who did not answer in person but by counsel appointed by the court for non-residents.

The case was tried to a jury on special issues. Answers were favorable to plaintiffs and judgment was entered for them jointly, without attempting to designate the respective interests of each. Humble Oil & Refining Company and Magnolia Petroleum Company have appealed to the Texarkana Court, and under an equalization order by the Supreme Court, the case is before us for review.

The parties will carry, here, the same designation as in the trial court, except when it becomes necessary to mention one or more in the same class with others we will give names, calling the Humble Oil & Refining Company, "Humble", and Magnolia Petroleum Company, "Magnolia".

Plaintiffs are the heirs of A. Owings, deceased, and his surviving wife, Cora Lee Owings, who qualified as Community Survivor under the statutes provided in such cases. It is conceded that P. C. Majors owned the McKinney & Williams Survey of 160 acres, and caused it to be fenced in 1894. The description of the Survey, as disclosed by the Patent, is as follows:

"Beginning at a stake the N.W. corner of a 160 *a* preemption sur\ for Wm. F. Dyer on E. Bdy of a 960 A sur for Wm. Birdwell fr wh a PO brs N 81 deg. E 44–½ vrs.

"Thence N * * *. vs passed Birdwell's NE cor 950 vrs stake a pile of rocks in prairie.

"Thence E 950 vrs a stake on a pile of rocks in prairie on the N(W) bdy line of a 1280 acre sur for O. James.

"Thence S 950 vs a stake Dyer's NE cor on James W. bdy line fr wh a PO brs S 42 deg E 60–½ vrs.

"Thence N 950 vrs to the beginning."

By mesne conveyances, A. Owings acquired the tract as fenced by Majors, and admittedly went into possession of it in 1909, and plaintiffs have continuously occupied, used and claimed all lands within the inclosure since that date. They believed, when they purchased, that the fences were on the lines of McKinney & Williams. The strip of land in dispute is within the fenced inclosure.

Humble claims under a mineral deed from Cora Lee Owings, Community Survivor, to Perryman, dated July 28th, 1931, conveying one-half interest in the oil, gas and mineral rights under a tract described as follows: "Being 160 acres more or less, out of the McKinney & Williams Survey, and being all of said Survey, and being same land described in Patent to B. H. Epperson of record in Book O, page 280 of the Deed Records of Franklin County, Texas."

Humble also claims a leasehold on the land under an oil and gas lease by Cora Lee Owings, individually and as Community Survivor, to Mercer, dated August 1st, 1935, in which instrument the lands covered are located in Franklin County and described as follows:

"Being all of the McKinney & Williams 160 acre Survey, Abst. No. 342, and described as follows:

"Beginning at a stake at the N. W. Corner of a 160 acre survey for Wm. F. Dyer on E. B. line of a 960 acre survey for Wm. Birdwell;

"Thence North 950 varas a stake;

"Thence East 950 varas to a stake;

"Thence South 950 varas a stake;

"Thence West 950 varas to a stake the place of beginning, containing 160 acres of land."

Humble also holds an oil and gas lease on the west part of the Orlando James Survey, dated August 3rd, 1931, from

King and Hughes, who have owned that part of the James Survey for more than twenty-five years, and the lease will cover the strip in controversy, if it is situated in the James and has not been lost to its record owners by limitation claimed by plaintiffs.

Magnolia claims under one branch of conveyances in an oil and gas leasehold right under the above mentioned Perryman lease, and under other assignments of interests between it and Humble, the exact nature of which is unimportant. There are perhaps fifty or more instruments shown in the record making up the respective claims of the two named defendants, but we think we have mentioned enough of them and given the descriptions shown in a way that will enable us to discuss the rights of each.

There is no contention upon the part of plaintiffs that the defendants do not hold valid mineral rights and leasehold claims, as contended for by them on the McKinney & Williams 160 acre survey. But they do contend that within the fenced inclosure they have acquired by limitation the strip of land in controversy, off the west edge of the James Survey, and that having sold and leased those interests in the McKinney & Williams, that strip off the James did not pass to defendants, and they seek to recover from defendants the asserted rights thereto and quiet their title to the described strip.

Plaintiffs claim only to their east fence line, and if the fence is on the east line of McKinney & Williams, they have nothing and cannot recover, but if that east line is slightly west of the fence, then they should recover, all between the true line and the fence.

The evidence adduced upon the trial is voluminous; it consists of nearly 900 pages besides large plats made by apparently competent surveyors, photographs and other exhibits sent up by the trial court.

The testimony indicates that the disputed line is on a prairie with no natural objects or monuments to mark it. The fence stands as it was constructed in 1894, and in 1897 a county road was laid out immediately adjacent to the east side of the fence; the respective owners on the two sides have always considered that the road was the line between their lands. Oil developments rendered all the land in that vicinity valuable. Plaintiffs having leased the McKinney & Williams 160 acres, had it surveyed and thereby discovered they had the strip now in controversy, more than was in that survey, and now claim it, as they have a right to do, by virtue of prescription. Plaintiffs' surveyor shows by a plat made by him from measurements of that and several other surveys, the McKinney & Williams Southeast corner is 29.32 varas west from the fence corner, and that the northeast corner is 9.7 varas west of that corner of the fence and that the true east boundary line of the survey, as well as the west boundary line of the James, is shown by a line drawn between those two points indicated on the plat as line "C–D" and that there are 3.28 acres in the strip. The same plat shows that the southwest corner of the survey (which point is the beginning place in all descriptions shown) is at a point marked "G". Plaintiffs' surveyor, who testified in their behalf, gave in lengthy details how he arrived at the designated points as the true corners of the survey, and after proper identification, the map was placed in evidence.

Defendants' surveyor, after apparent painstaking investigation of various adjacent surveys having superiority over the one in controversy, surveyed the ground and platted his findings; being properly identified, that map was introduced in evidence. This shows the east boundary line of the McKinney & Williams survey and the west line of the James to be in the center of the road mentioned above, running along and adjacent to plaintiffs' fence. By this map, and by his testimony, defendants' surveyor located the southwest corner of McKinney & Williams 21 varas east of plaintiffs' southwest fence corner, and by projecting a line from that point east 966.4 varas for the south boundary line of the survey, would put its southeast corner in the road. The southwest corner, as located by defendants' surveyor, was designated on the first mentioned plat as point "2". The west line of the survey was then projected north 950 varas, east 956.7 varas (to the center of the road) south with the road and west to the beginning, as the true location of that survey.

We have mentioned these corners by letters and number, as shown on the plat called "Plaintiffs' exhibit No. 114", for the reason the issues submitted to the jury

thus refer to them, and error is assigned on that account; we shall later discuss that phase of the appeal.

The case was submitted on the following definitions, explanations and special issues:

"2. You are instructed that in locating the lines of the McKinney & Williams survey wherever there is a conflict in a call between its course, distance or natural or artificial object, you will give controlling effect to natural objects, artificial objects, course and distance in the order named.

"3. You are further instructed that a line of a located survey is an artificial object and controls a call for distance.

"5. Bearing in mind the foregoing instructions and definitions, you will answer the following issues:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the East Boundary line of the McKinney & Williams Survey as originally run is at the place as shown by line C. D. by Plaintiffs' Surveyor, M. H. Hackney, on Plaintiffs' Exhibit No. 114? (Answer 'Yes' or 'No'.)

"Answer: Yes.

"If in answer to special issue No. 1 you have answered 'No', then answer the next special issue. If you have answered 'Yes' to special issue No. 1 then you need not answer the next special issue.

"Special Issue No. 2: Where do you find from a preponderance of the evidence, is the East Boundary line of the McKinney & Williams Survey as originally located? (Answer as you find the facts to be).

"Answer: ———.

"Special Issue No. 3: Do you find from a preponderance of the evidence that the Southwest corner of the McKinney & Williams Survey is as located at Point G on Plaintiffs' Exhibit No. 114? (Answer 'Yes' or 'no').

"Answer: Yes.

"If in answer to special issue No. 3 you have answered 'No' then answer the next special issue. If you have answered 'Yes' to special issue No. 3 then you need not answer the next special issue.

"Special Issue No. 4: Do you find from a preponderance of the evidence that the Southwest corner of the McKinney & Williams Survey is as located by Defendants' Surveyor, H. G. Presley, as shown at Point 2 on Plaintiffs' Exhibit No. 114? (Answer 'Yes' or 'no').

"Answer: ———."

Upon the verdict, the court entered judgment for plaintiffs against all defendants for the recovery of the following tract of land:

"Beginning at the Southeast corner of the McKinney & Williams Survey from which the East prong of a triple post oak bears South 78 degrees 36 minutes East 49.43 varas distance;

"Thence North 0 degrees 45 minutes East with the East boundary line of McKinney and Williams Survey and the West boundary line of the Orlando James Survey 950.05 varas to a stake, same being the Northeast corner of the McKinney and Williams Survey and the Northwest corner of this tract and in the West line of the Orlando James Survey;

"Thence East 9.7 varas to a stake in fence line on the west edge of the County line Road;

"Thence South 0 degrees 26 minutes East with said fence 950 varas to a stake in the Southeast fence corner for the Southeast corner of this tract;

"Thence West with fence line 29.32 varas to place of beginning, and containing 3.28 acres of land."

Defendants assigned 65 errors and have discussed such as are relied upon under 16 propositions. We have given much time and study to this record and have concluded the case should be reversed and remanded, for the reasons we shall presently notice.

From what has already been said, it will be observed that plaintiffs had conveyed and granted to defendants, Humble and Magnolia, certain definite rights in the Mc-Kinney & Williams Survey of 160 acres. The evidence is sufficient to show this amount is all that was contemplated by the parties and is all that was paid for. A location of that survey should fix the rights of defendants and its east boundary line is determinative of whether or not, (a) plaintiffs had within their inclosure more land than the survey contained, and (b) if the excess so inclosed is a part of the James Survey, it was acquired by plaintiffs through prescription.

To properly understand the issues complained of, it is deemed advisable to incorporate in this opinion a rough plat, taken

substantially from "Plaintiffs' Exhibit 114", referred to in the special issues. No particular effort has been made upon our part to adhere strictly to a scale. The narrow shaded strip just east of McKinney & Williams is the tract of land in controversy. Points G, E, D and C represent the corners of the survey as contended for by plaintiffs' surveyor. The broken or dotted lines 2, 3, 4 and 5 are shown on the plat to be red, and represent the location of the survey as contended for by defendants' surveyor.

The defendants controverted each of these issues under their pleas of not guilty and introduced testimony sufficient to raise the question of the location of the east line of the survey and incidental to the location of that line, the southwest corner of the survey. That corner is named in each set of field notes as the beginning place for the description of the survey. The jury, in answer to the first special issue, found the east boundary line of the McKinney & Williams Survey to be as

The burden of proof was on plaintiffs to establish the true east boundary line, as well also to show that there was an additional strip within the inclosure and that they had acquired it by limitations.

shown by a line between points C and D on the map referred to by the court. This was as contended for by plaintiffs. A proper location of that line, however, was dependent upon the beginning or southwest

corner of the survey, which was called G on the map, as testified to by surveyor Hackney. Surveyor Pressley, a witness for defendants, placed the southwest corner about twenty-one varas east of the point designated by Hackney, and by a projected line east 966.4 varas located the southeast corner in the center of the road, as contended for by defendants. The location of the southwest corner by Pressley (defendants' surveyor) was designated on the map used by the court in his charge as a point at "2". If the southwest corner of the survey was at "2" and not at "G", defendants had presented a good defense to plaintiffs' case. The last statement by us does not take into consideration the distance between "G" and "2", nor the length of the projected south line, by Pressley. In these circumstances, defendants were entitled to submission of an issue in an affirmative form presenting their defense for determination by the jury. The burden of proof was on the plaintiffs to procure a verdict that the southwest corner of the survey was not at point "2", as claimed by defendants. This burden was not discharged by a finding that the corner was at "G". Special issue four was improper in two respects: (1) Because it was conditionally submitted, that is, if No. 3 should be answered in the affirmative, then the jury need not answer No. 4; and (2) as framed, even if No. 4 had not been conditionally submitted, it erroneously placed the burden of proof on defendants. The defendants timely objected to these issues, and especially to No. 4, and pointed out the error in their amended motions for new trial. Thurman v. Chandler et al., 125 Tex. 34, 81 S.W.2d 489, rule stated at page 491, citing Montrief & Montrief v. Bragg, Tex. Com.App., 2 S.W.2d 276. See, also, the splendid discussion of the same point, in Jones-O'Brien, Inc. v. Loyd et al., Tex.Civ. App., 106 S.W.2d 1069, error dismissed, and the many cases there collated.

■ It is now well settled that defendant is entitled to an affirmative submission of every issue made by his pleading and proof, which, if established, would be a defense to plaintiffs' case. The answer of an issue favorable to plaintiff will not obviate the necessity of requiring an answer to the issue pertaining to defendants' rights. The issues submitted and answered are to be considered as when submitted and not after some have been answered and returned into court. This is true even if the answers to the defensive is-

sues result in contradiction to those for plaintiff. Texas Indemnity Ins. Co. v. Thibodeaux, 129 Tex. 655, 106 S.W.2d 268; Traders' & Gen. Ins. Co. v. Forrest, Tex. Civ.App., 78 S.W.2d 987; Indemnity Ins. Co. v. Boland, Tex.Civ.App., 31 S.W.2d 518, writ refused; Traders' & Gen. Ins. Co. v. Shanks, Tex.Civ.App., 83 S.W.2d 781, writ refused; Wright v. Traders & Gen. Ins. Co., Tex.Com.App., 123 S.W.2d 314; Southern Underwriters Ins. Co. v. Wheeler, Tex.Com.App., 123 S.W.2d 340; Traders & Gen. Ins. Co. v. Lincecum, Tex.Civ. App., 126 S.W.2d 692. The error complained of is contained in 21st assignment of error and presented here by defendants' eighth proposition in Humble's brief. The assignment must be sustained, which requires a reversal of the case.

By propositions 1, 2, 3 and 5 it is contended by defendants that the court erred in refusing to give a peremptory instruction to the jury, because (1) by the assignment and lease from plaintiffs to defendants it was intended between the parties that all lands inclosed should pass; (2) the undisputed testimony showed plaintiffs and adjacent property owners to the east of the road had for many years recognized the road as the line between the two surveys; (3) Surveyor Hackney's map or plat was not based upon natural or artificial objects, but were conclusions and deductions of the witness; and (5) plaintiffs had previously granted to defendants a right-of-way easement across the disputed strip and designated it as a part of the McKinney & Williams Survey, and were estopped to now deny it.

■ We do not think a summary instruction should have been given for either of the reasons urged. It may be said that plaintiffs did not know they had any of the James Survey inclosed at the time they gave the assignment and lease on the McKinney & Williams Survey, but there is nothing in those instruments to indicate that the parties thereto intended or expected that the instruments should cover all the land owned by plaintiffs. On the contrary, the testimony of Mrs. Owings, who executed the instruments, is to the reverse. This alone would be sufficient to make it an issue and prevent a peremptory instruction.

■ The fact that the owners of the land on each side of the road believed the road was the line between the two surveys, when in fact it was not, and by so locating the east line require the record owner and pos-

sessor to abandon the same number of acres on the west of his land, would work an anomalous situation. Surveyor Pressley, who testified at the instance of the defendants, shows that to place the east line in the road, as contended for by defendants, and make the north and south lines 950 varas long, as called for in the Patent, would force the west line of plaintiffs' land approximately 36 varas east of the line of occupancy, as shown by Surveyor Hackney.

■ It is further urged that a peremptory instruction should have been given because plaintiffs' right to recover depended upon the accuracy of the testimony of Surveyor Hackney and the map made by him in demonstration of his findings on the ground. Additional reasons are assigned on this point and presented by propositions 4 and 16, wherein it is complained that the court erroneously admitted in evidence the map or plat designated "Plaintiffs' Exhibit No. 114." It is contended that the evidence does not show that the surveying by Hackney and the plat made by him are based upon natural or artificial objects identified by the field notes given in the Patent to McKinney & Williams Survey. We cannot agree with this contention. The testimony of Hackney shows much in detail how he arrived at the beginning corner of the McKinney & Williams, and found evidences of the natural objects witnessing the original corner when surveyed in 1860. He further shows that by projecting the west line, north (incidentally with occupancy) he found the corner of an adjoining senior survey and Lewis Creek at the proper distances. We think clearly there was no error committed by the court in permitting the evidence contained in the map to go to the jury, in view of the surveyor's testimony.

■ There is no merit in the contention that plaintiffs are estopped to deny that the strip of land is within the McKinney & Williams Survey, because of the right-of-way easement to one of the defendants. An inspection of the instrument discloses that all mineral rights were reserved by grantors, and defendants only claim oil, gas and mineral rights under such conveyances as they hold.

■ It is claimed by the 6th and 7th propositions that special issues one and three, as submitted by the court, are upon the weight of the evidence and give undue prominence to the testimony of Surveyor Hackney. These contentions are based upon the fact that those issues called for answers based upon the map or plat prepared by Hackney and about which he testified. The plat was the result of his investigation upon the ground, and made from actual measurements and surveys. In one sense, it pictured to the jury what he claimed to have found and described in his oral testimony. Whether or not a court can best procure from a jury their estimate of the facts by submitting issues, the answers to which will be disclosed by a map, is a most interesting question. Obviously the plan is fraught with dangers; but we have speculated in our own minds as to how it could be improved upon. Some of the supposed better methods lead to absurdities. The first issue inquired if the east line of the McKinney & Williams Survey was on the line C–D, as appeared on the map. It is true that the jury had the map before them and it clearly showed on its face that that is where Hackney placed it, but it is equally clear that on the same map then under consideration was a line in red, which ran along the center of the road, the place where Surveyor Pressley, who testified for defendants, placed it. The location of that line was the point in issue. If the jury had been asked in a proper question to locate the line independently of any plat, it would have been next to impossible for them to have done so, for the record does not disclose that there were any natural or even artificial objects to which they could refer in such an answer. In attempting to answer a question in that form, they could have sketched or platted the line by a reference to the road or fences, but to have done so would not have been more definite than the plan used. In fact, the answer, as given, adopted the plat as their own, and if they had believed the line was in the road, as indicated by the red line on the map, or even elsewhere than at C–D, their answer to the issue would have been "No", instead of "Yes", as they did answer. Such plan as adopted in this case has been approved by two of our Courts of Civil Appeals, in the cases of Still v. Barton, 76 S.W.2d 783, writ dismissed, and Mid-Kansas Oil & Gas Co. v. Burton, 87 S.W.2d 338. In the last mentioned case a writ of error was granted by the Supreme Court and is now pending, but we note the writ was granted on other grounds, which bear no relation to the question here raised. We believe the reasoning in those cases sound and adhere to the principles there announced. The assignments must be overruled.

By propositions 9, 10 and 11, based upon adequate assignments, it is claimed that the judgment of the court is not founded upon the pleadings and the verdict. It is fundamentally true that the judgment must conform to the pleadings and the nature of the case proved and the verdict of the jury, if one is had. Article 2211, R.C.S., Vernon's Ann.Civ.St. art. 2211. In the beginning of this discussion, we quoted that part of the pleadings of plaintiffs which described the land sought to be recovered. It is clear to us that the strip of land in controversy lay just east of the east boundary line of the McKinney & Williams Survey, although the description, as plead, calls for a strip slightly broader than that recovered and described in the judgment. The only difference between the description in the judgment and that in the pleading is that of the width of the strip. The pleadings alleged it to be 23.04 varas wide at the north end, while the judgment described it as 9.7 varas wide at that end. The pleadings alleged the width at the south end to be 29.88 varas and the judgment described it as being 29.32 varas there. The plat upon which the jury based its verdict shows in plain figures the width of the strip and its entire length precisely as recited in the judgment. The judgment embraces less land than that claimed in the pleadings, located precisely as contended for by plaintiffs' petition; the greater allegation should be held to embrace the lesser recovery. We cannot adhere to a doctrine that would mean that if plaintiff did not recover all he sues for, that he cannot recover, upon proper proof, a lesser amount.

It is contended by defendants that the judgment, as entered, is not decisive of anything; that nothing is settled by the judgment; that because the issue was the true location of the east boundary line of the McKinney & Williams Survey, and the judgment for the land recovered calling for a beginning at the southeast corner of that survey, is not decisive and would not enable an officer to execute a writ of possession without performing a judicial function. With this we cannot agree. The judgment is definite as to the southeast corner of the survey, in this, it reads: "Beginning at the southeast corner of the McKinney and Williams Survey, from which the east prong of a tripple post oak bears south 78 degrees 36 minutes East 49.43 varas distance." The further calls in the judgment mention the east boundary line of McKinney & Williams and the west boundary of the James; that line, of course, is the controverted one; yet the second and third calls refer to the fence line on the west edge of the county road. There is no controversy as to the location of the fence or the road. An officer could, we think, find these natural and artificial objects and thus be able to execute a writ of possession. The judgment is sufficient if an officer can properly execute it, even with the aid of a surveyor. "The test of the sufficiency (in such cases as this) is as to whether the judgment so identifies the land that an officer charged with the duty of executing a writ of possession could go upon the ground and without exercising judicial functions, ascertain the locality of the line. That is, where the officer could, with the assistance of a competent surveyor, find the line by the matter set out in the judgment." See Whitmore v. McNally et al., Tex.Civ.App., 39 S.W.2d 633, 635; 7 Tex.Jur. page 258, sec. 94; Jones v. Andrews, 72 Tex. 5, 9 S.W. 170; Watkins v. Hines, Tex.Civ.App., 214 S.W. 663; Billups v. Cochran, 60 Tex.Civ.App., 473, 127 S.W. 1121; Collins v. Powell, Tex. Civ.App., 268 S.W. 1031; Anderson v. Corbett, Tex.Civ.App., 287 S.W. 66.

The plat used by the jury, and upon which their verdict was based, and which thereby became a part of their verdict, was made a part of the judgment in this language: "It is further ordered, adjudged and decreed that the plaintiffs' Exhibit No. 114 be filed with the Clerk and by the Clerk retained as a part of the papers in this cause in order to better understand and identify the issues submitted to and the answers made by the jury in its verdict." We see no reversible error in the points raised and they are overruled.

Proposition twelve challenges paragraph two of the preliminary part of the court's charge, quoted above, wherein the jury was told to give controlling effect, in case of conflicts, to natural objects, artificial objects and to course and distances, in the order named. It is claimed by defendants that the paragraph referred to constitutes a general charge, and when, as was done in this case, special issues are submitted, it is error to give a general charge.

The court included that paragraph in his charge, evidently upon the theory that it was explanatory and necessary to enable the jury to pass upon and render a verdict upon the issues submitted.

Article 2189, R.C.S. provides, among other things, that: "In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." Strictly speaking, the charge complained of does not explain or give a definition of any legal term used in the charge. But we believe the purpose of the statute was to facilitate and aid the jury in understanding the issues submitted, so as to enable them to answer the questions intelligently. In a case of this kind, there is a marked distinction to be drawn between a general charge and a general instruction. The former authorizes a verdict based upon the charge and of necessity informs the jury of the effect of their findings upon the judgment to be entered; while a general instruction does not have that effect, but is only an aid to the jury in properly answering an issue. In a broad sense, any explanation of a legal term, specifically provided for by statute, is a general instruction; that is, it is not a question or issue to be answered. An instruction given in connection with an issue on the amount of damages, wherein the jury is told what elements of damages may be considered by them in arriving at a verdict, is general in its nature, and yet such a charge has never been condemned by our courts. International-G. N. Ry. Co. v. King, Tex.Com. App., 41 S.W.2d 234. In Roadway Express, Inc. v. Gaston, Tex.Civ.App., 91 S. W.2d 883, writ dismissed, this expression from Speer's Special Issues was quoted with approval: "It is always proper, when necessary, to give certain general instructions. Even definitions and explanations of words and terms employed, are in their nature general instructions, but beyond these there are certain important instructions that may, and many times (should), be given."

Relating especially to boundary suits, such as the one before us, it is said, in Speer's Special Issues, at Section 126: "It is well nigh impossible at times for the jury to locate corners and lines without a knowledge of the established law as to the dignity of calls and the like. The permitted instructions are usually numerous here because of the complexity of the fact of locating the point or line."

In the recent case of Mayfield Co. v. Pepper, 129 Tex. 307, 103 S.W.2d 737, the question before the trial court was whether or not certain property was the homestead of one of the parties at a given time. In connection with the issue submitted on that point the court gave an elaborate definition of homestead and explained to the jury how and under what conditions property would be homestead in its nature, and how long under given circumstances it would remain such. The explanations given were no doubt correct statements of the law applicable to the subject, but the Supreme Court condemned the charge as being a general one.

The rule in this State is so well settled that when a case is submitted to a jury on special issues that no general charge shall be given, that it requires no citation of authorities to support it. It is extremely hazardous for a court to approach the line of demarcation between general instructions and general charges, when to encroach upon the former will spoil an otherwise perfectly good judgment when obtained. However, we do not believe the matters complained of here could be classed as general charges, nor were they such as could in any way apprise the jury of the legal effect of their answer to any one or more of the issues submitted. The assignment is overruled.

There are other assignments of error briefed which complain of argument of plaintiffs' counsel to the jury. The cases reported in our law books are legion where counsel has sacrificed his client's case because he had gone beyond the record and injected into the case some unwarranted matter. We find it unnecessary to a disposition of this appeal to discuss those assignments, for, in all probability, they will not occur again.

For reasons hereinabove shown, concerning the submission of special issue No. 4, we find it necessary to reverse and remand this cause for another trial, which is accordingly so ordered.

### On Motion for Rehearing.

The twenty-three plaintiffs below, and the appealing defendants, Humble Oil & Refining Company and Magnolia Petroleum Company, have heretofore filed motions for a rehearing in this cause, but subsequently filed a joint motion, calling our attention to the fact that we took no cognizance of the sixty or more defendants in the lower court who did not appeal. This was an oversight on our part and demands our attention at this time. The statements in

the original opinion concerning them, and that only the two above named defendants had appealed, make this obvious.

We therefore sustain the subsequent joint motion, set aside our former judgment and withdraw the last paragraph of our original opinion, and substitute therefor the following:

The judgment of the trial court entered in favor of plaintiffs against all defendants, except Humble Oil & Refining Company and Magnolia Petroleum Company, is hereby in all things affirmed. But as between plaintiffs and defendants, Humble Oil & Refining Company and Magnolia Petroleum Company, for reasons shown, and the joint motion filed by counsel for all said parties, including plaintiffs and the said appealing defendants, the judgment of the trial court is reversed and the cause remanded for another trial. Affirmed in part and reversed and remanded in part.